15653

LYNCH v. PEE DEE EXPRESS, INC.

(30 S. E. (2d), 449)

*Mr. Geroge W. Keels,* of Florence, S. C., Counsel for Appellant,

*Mr. M. M. Weinberg,* of Sumter, S. C., and *Messrs. Mc-Eachin & Townsend,* of Florence, S. C., Counsel for Respondent,

June 2, 1944.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court:

The question is whether the Court properly directed a verdict for defendant, on the ground of contributory negligence and recklessness of the driver of plaintiff's car, in an action arising out of a collision of an automobile and truck, on October 29, 1942, at the intersection of Purdy and Haynesworth Streets in the City of Sumter, South Carolina.

Purdy Street runs north and south, and at the time of the collision, owing to some highway repairs being made in Sumter, was being used as a detour on State Highway No. 76. It was a "through" street and all vehicles approaching on Haynesworth Street were required to stop before entering the intersection. There were the usual stop signs on Haynesworth Street at or near the intersection. Haynesworth Street

runs east and west and intersects Purdy at right angles. The record does not disclose the exact width of these streets, but we gather from the testimony that they were approximately 30 or 40 feet wide.

Plaintiff, a physician residing at Lake City, was making a trip in his Lincoln car, driven by a nurse employed by him, to Boykin, S. C. In the course of this trip, his car was being driven east on Haynesworth Street. The defendant's truck, lightly loaded and driven by one of its employees in the course of making deliveries, was traveling north on Purdy Street. The plaintiff and his driver testified that as they approached Purdy Street, they saw a stop sign at or near the intersection and came to a full stop at this sign; that they looked for approaching traffic on Purdy Street and seeing none, entered the intersection, crossed the western side of Purdy Street in low gear at the rate of about ten miles per hour; and that they then made a left turn to the right of the intersection for the purpose of going north on Purdy Street, and had proceeded about six or eight feet in making the left turn, when the Chevrolet truck suddenly "darted out" in front of them and the two vehicles collided. While there was some testimony as to an obstruction of the view caused by a house and some shrubbery, it appears that one stopping where plaintiff stopped before entering the intersection could see to the right, south along Purdy Street approximately a block. However, the testimony as to the exact distance one could see is rather indefinite. No measurements were taken. Two witnesses estimated it as "a block," another "several blocks," and the driver of plaintiff's car "I wouldn't say a block." Both plaintiff and his driver testified positively that they stopped and looked to the right before starting and entering the intersection and there was no traffic in sight. According to their testimony, at the time of the collision, plaintiff's car had crossed the west side of Purdy and had about made a half left turn in undertaking to go north on the east side of Purdy Street—in other words, plaintiff's car was at

an angle of about 45 degrees at the time of the collision—and neither the plaintiff nor his driver saw the Chevrolet truck until it "darted out" in front of them and the collision occurred. Both testified that defendant's truck was traveling at a rate of about fifty miles per hour.

The right front of plaintiff's car came in contact with the left rear side of the truck.

One of the defendant's witnesses testified that he "just could see a little scar place on the rear end of the truck," meaning the rear end of the left side. The plaintiff was thrown from the car a distance of about 30 feet on the pavement. After the collision plaintiff's car rolled into the curb at the northeastern corner of the intersection, while the truck turned over and was found lying on its right side on Purdy Street, about 30 feet north of the intersection. The weather on this day was clear and the streets were dry. No skid marks were found on the street at the intersection. In fact, the driver of the truck stated that he did not apply his brakes.

There were no eyewitnesses to the movements of the vehicles prior to the collision except the plaintiff, his nurse and the driver of the truck. The truck driver testified that he was traveling at a rate of about twenty miles per hour. On direct examination, he testified that he saw the Lincoln car as it was entering the intersection, that it did not stop, and that he was a little north of the middle of the intersection when the automobile hit the truck. On cross examination, we take the following from his testimony:

"Q. As you approached the intersection did you see this Lincoln car? A. No, I didn't.

"Q. Were you looking, were you keeping the proper lookout all the time for cars at intersections? A. I do.

"Q. You didn't see the Lincoln car at all approaching the intersection? A. Not until the car was almost on my truck.

"Q. You want to contend, like these silent witnesses, this picture, that all of this is open, you can see way down

Haynesworth Street? How far can you see down Haynes-worth, according to you? A. You can't see so far on Haynes-worth, going north on Purdy."

Under an ordinance of the City of Sumter, the maximum speed limit for trucks in this area is 25 miles per hour. The ordinance of the City governing vehicles entering a stop intersection is as follows:

"(a) The driver of a vehicle shall stop as required by this ordinance at the entrance to a stop intersection and shall yield the right-of-way to other vehicles which have entered the intersection from the cross street, or which are approaching so closely on cross street as to constitute an immediate hazard, but said driver, having so yielded, may proceed, and the drivers of all other vehicles approaching the intersection on said cross street shall yield the right-of-way to the vehicle so proceeding into or across the cross street.

"(b) The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

It will be observed that the quoted ordinance is substantially the same as the State law regulating vehicles entering a stop intersection, which is contained in Section 1616, Subdivision 21, Code of 1942.

At the close of all the testimony the trial Judge granted defendant's motion for directed verdict on the ground of contributory negligence and recklessness of the driver of plaintiff's car, expressing the view that the only reasonable inference to be drawn from the testimony was "that the truck of the defendant had entered the intersection before plaintiff's car entered the intersection;" and if plaintiff's car stopped before entering the intersection, the only other conclusion that could be drawn was "that if the defendant's

truck were approaching the intersection at that time, the driver of the plaintiff's car showed a reckless disregard for her own safety in failing to observe it."

The only question presented for our determination is whether the driver of plaintiff's car is guilty of contributory negligence and recklessness as a matter of law.

The rule is well established in this jurisdiction that in passing upon a motion by a defendant for a directed verdict, the testimony must be viewed in the light most favorable to the plaintiff; and if more than one reasonable inference can be drawn therefrom, or if the inferences to be drawn from the testimony are in doubt, the case should be submitted to the jury. *Lineberger v. City of Greenville,* 178 S. C., 47, 182 S. E., 101.

When we reflect that if a vehicle is traveling at the rate of 50 miles an hour, it is going at the rate of 73 feet per second, the element of time is a most important circumstance to be considered in determining whether a driver has acted with ordinary care. "It is an element all too likely to be overlooked when the situation is viewed in retrospect in the slower tempo of a trial or in the quiet of judicial chambers. He who would decide whether another has used ordinary care at a highway intersection should make that decision, not in his library, not by the aid of diagrams and models which he showly moves by hand upon his diagrams, not in a place where a hundred feet seems no little distance," but he must place himself as nearly as possible in the position of the person sought to be charged with negligence. *Glynn v. Krippner et al.,* 8 Cir., 60 F. (2d), 406, 408.

While a jury could reasonably infer from this testimony that plaintiff's driver was negligent or reckless, we do not think we would be warranted in holding that this is the only reasonable inference to be drawn.

Both the statute and the ordinance required plaintiff to stop before entering this intersection; and having stopped, ordinary care further required that the driver should look for approaching traffic on Purdy Street. *Branham v. Wolfe Transportation Co.*, 170 S. C., 164, 169 S. E., 889. It is not sufficient to stop, for to stop and not to look would render the purpose of stopping ineffective. Having stopped the driver must exercise reasonable care and diligence to discover whether traffic on the "stop street" is approaching the intersection. Both plaintiff and his driver testify positively that they complied with both of these requirements and the credibility of this testimony is for the jury. When the driver looked for approaching traffic on Purdy Street, if no other vehicles had entered the intersection or were approaching so closely as to constitute an immediate hazard, the driver was warranted in proceeding. Plaintiff's testimony is further to the effect that no vehicles were in sight. If the jury believed this testimony, all requirements of the statute were met.

But it is argued that as the view to the right was unobstructed for a distance of a block, the truck was necessarily within the block when plaintiff entered the intersection, and it is said that the plaintiff's driver will be charged with having seen what necessarily she would have seen if she had looked before crossing the intersection. We do not think that this is a necessary or the only reasonable inference to be drawn from the testimony. The record is silent as to the length of a block. Although the burden of proof on the issue of contributory negligence was on the defendant, no witness was offered who measured the distance of this unobstructed view and no one testified as to this distance with exactness. Blocks frequently vary in distance several hundred feet. If the truck was approaching the intersection at 50 miles per hour, which would be 73 feet per second, it would travel a distance of 438 feet in approximately six seconds. When plaintiff's driver stopped, her immediate hazard

in crossing was to the left, so that before starting she was required to look in both directions. After doing this, she started and says that she traveled across the western side of Purdy Street and had made a half turn around the center of the intersection when the collision occurred. In view of all the circumstances, including the time required for plaintiff's driver to make these movements, and considering the testimony as to the distance which she could see to the right in the light most favorable to plaintiff, we think it was for the jury to say whether the defendant's truck could have been seen before plaintiff's driver entered the intersection and whether this truck was approaching so closely as to constitute an immediate hazard. The quoted testimony of defendant's driver discredits to some extent the contention of defendant as to the extent of the visibility of the drivers of vehicles approaching this intersection.

Defendant further suggests that plaintiff and his driver were in no position to judge the speed of the truck. It is true that their opportunity for observation before the collision was limited. But they saw the vehicles as they crashed and their subsequent movements. We cannot say that this testimony as to the speed of the truck is without probative value. Nor does the fact that the left rear side of the truck was damaged necessarily indicate that the truck first entered the intersection. Considering the fact that the left front of plaintiff's car was not damaged and that there was only "a little scar place on the rear end of the truck," together with the movements of the vehicles after the crash, a reasonable inference may be drawn that plaintiff was making a left turn when the truck entered the intersection and that the truck sideswiped plaintiff's car in undertaking to go around it at a rapid rate of speed.

Counsel for defendant elicited from plaintiff's driver on cross examination the further statement that before entering the eastern side of Purdy Street, which

would be the traffic lane of cars going north on Purdy, she again looked to the right and did not see the truck. If the jury found that the driver was warranted in undertaking to cross the intersection, further lookout on her part in proceeding across the intersection would be measured by the rule of ordinary care at common law. In making this left turn, traffic going west on Haynesworth Street would also constitute a hazard. We cannot say that she was guilty of negligence as a matter of law in failing to look to the right at this point, or in failing to see the truck approaching. It would be for the jury to determine whether the driver was negligent in this respect. A somewhat similar question arose in the case of *Greenleaf v. Richards,* 178 Va., 40, 16 S. E. (2d), 374, 375. The defendant, Greenleaf, was traveling in Virginia on an arterial highway—No. 29. The plaintiff was traveling on a secondary highway—No. 33—and was required to stop before crossing No. 29. He stopped and looked to the right where he had a vision of 500 feet and saw no car coming along No. 29. The defendant approached from his right on No. 29 and the two cars collided at the intersection. The Court held that the plaintiff was not guilty of contributory negligence as a matter of law. In discussing a request to charge on the failure of the plaintiff to look again after starting across the intersection the Court said:

"The defendant by that instruction requested the court to tell the jury that it not only was Richards' duty 'to stop and look, as required by the stop sign on route 33, but to continue to look until his car was safely across the traveled portion of U. S. No. 29 * * * '. If it were intended by this instruction to tell the jury that Richards was bound to continue looking to the south and to the north on No. 29, it was erroneous. His duty also required him to look in front and to observed the movement of other cars that were, or might be, entering the highway. It was his duty to look in all directions rather than to look in one or two directions. But in the very nature of things he could not be expected to per-

form the impossible and look in all directions at one time. When he stopped and looked to the south on No. 29, he did not see the Greenleaf car because it was evidently in the dip in the road and out of his sight. He had the right to cross No. 29 if he exercised the proper degree of care. He was not bound to continue to look for the Greenleaf car to the exclusion of his other duties of lookout. The instruction was erroneous and properly refused."

We do not think the conclusions herein reached are in conflict with the decision of this Court in *Branham v. Wolfe Transportation Co.,* 170 S. C., 164, 169 S. E., 889. The plaintiff in that case, in approaching an intersection in the City of Columbia where the defendant had the right-of-way, admitted that he did not look to the right in approaching and entering the intersection, and the Court held that he was guilty of contributory negligence as a matter of law in not doing so.

The facts in this case are more analogous to those in *Neese v. Toms et al.,* 196 S. C., 67, 12 S. E. (2d), 859, 861. The collision in that case occurred at the intersection of Ashley Avenue and Beaufain Street in the City of Charleston. The defendant's car was being driven along Ashley Avenue, which is an express avenue. The plaintiff's car was proceeding on Beaufain Street and vehicles along this street were required to come to a complete stop before crossing Ashley Avenue and yield the right-of-way to other automobiles thereon. The driver of plaintiff's car testified that "before he entered Ashley Avenue from Beaufain Street he brought the car to a complete stop and changed his gears; that he looked both ways for cars approaching on Ashley Avenue and saw none; that looking south on Ashley Avenue he could see for probably 150 to 200 feet, and that there was no car approaching within that distance when he started across the avenue * * * when he had proceeded over the intersection to a point where the rear end of his car was about midway of the avenue the same was suddenly

struck by the defendant car, without warning, and driven into a fence." The Court held that the driver of plaintiff's car was not guilty of contributory negligence as a matter of law.

The following cases from other jurisdictions tend to support the conclusions herein reached: *Smith v. Hirschberg et al.*, 117 Conn., 692, 169 A., 618; *Adams v. Canfield*, 263 Mich., 666, 248 N. W., 800; and *Stryker v. Hastie*, 131 Or., 282, 282 P., 1087. The cases of *Hefner v. Pattee*, 1 Wash. (2d), 607, 96 P. (2d), 583, and *Greenfeld v Hook*, 117 Md., 116, 8 A. (2d), 888, 136 A. L. R., 1485, appear to support a contrary conclusion. However, the statute involved in each of the last-named cases is different in some respects from the ordinance and statute now before us. Moreover, the Maryland Court apparently applies to a traveler approaching an intersection on a "stop" street the same rule which is applied to a traveler approaching a railroad crossing. This Court, in *Bedford v. Armory Wholesale Grocery Co.*, 195 S. C., 150, 10 S. E. (2d), 330, a case involving collision between two motor vehicles, declined to apply the rule of law applicable to collisions at railroad crossings.

The order granting the motion for directed verdict is reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE BAKER, and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, and TAYLOR concur.