AMERICAN CASUALTY CO. OF READ-
ING, PA. v. HOWARD et al.

No. 6178.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1951.

Decided Feb. 17, 1951.

C. F. Haynsworth, Jr., and J. D. Poag, Greenville, S.C. (James H. Price, Greenville, S.C., on brief) for appellant.

Wesley M. Walker and Thomas A. Wofford, Greenville, S.C., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The American Casualty Company of Reading, Pennsylvania, (hereinafter called American) sought a declaratory judgment, in the United States District Court for the Western District of South Carolina, under an automobile liability insurance policy issued to Elaine Howard, one of the defendants herein. The District Judge granted the motion of defendants to dismiss. D.C., 80 F.Supp. 983. We reversed this judgment and remanded the case to the District Court, with directions to hear the case and to grant such relief as might be found to be proper. 173 F.2d 924. The District Court, sitting without a jury, then heard the case and filed its opinion, adverse to the contentions of American, which has again appealed to us.

American had issued to Elaine H. Howard its policy of insurance by which American agreed to indemnify the assured and anyone else driving the designated automobile with her consent, against legal liability arising out of any accident in which the automobile was involved to the extent of $5,000.00 for personal injury to, or the death of one person and $5,000.00 for property damage. The indemnification agreement, insofar as it relates to bodily injuries liabilities is designated "Coverage A" and insofar as it relates to property damage liabilities is designated as "Coverage B".

The insurance policy, in the standard form, provided that American shall have "the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company" and under sub-head entitled "Defense, Settlement, Supplementary Payments" the policy provided:

"As respects such insurance as is afforded by the other terms of this policy under coverages A and B the company shall

"(a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; * * *."

While the policy of insurance was in force, Elias Howard, with the permission of Elaine H. Howard, was driving the insured vehicle, and he was involved in an accident resulting in fatal injuries to George Roberts.

On May 1, 1947, Elias Howard parked the insured car parallel to and approximately six inches from the curb, headed in a northerly direction, on the righthand side of what is known as the New Buncombe Road, outside the city limits of Greenville, South Carolina, but in a zone restricted by the Highway Department to a speed limit of twenty-five miles per hour. The road at that point consists of an eighteen-foot paved center section, with eleven-foot, eight-inch asphalt shoulders on each side, making a total width from curb to curb of forty-one feet, four inches. Elias Howard reentered his car around Noon and undertook to make a 180-degree turn in order to proceed in a southerly direction back to Greenville. Howard had almost completed his U-turn when his car was struck on its right-hand side by the motorcycle driven by George Roberts, who died shortly after Midnight from injuries received in the collision. The testimony was conflicting as to whether the speed of the motorcycle was excessive and as to whether Howard exercised due care in deciding upon, and in executing, the U-turn. There was no law or traffic regulation which forbade such a turn.

There was evidence that Howard gave a hand signal before starting his U-turn and that he made this turn slowly and carefully, which should have enabled Roberts to observe Howard's car when the motor-

cycle was some distance from the car. It is clear that this U-turn had almost been completed before the collision, since the motorcycle struck the right-hand side of the car, after the car had almost reached the opposite side of the street. This, coupled with evidence that the motorcycle was proceeding at a very high rate of speed, shows more clearly why American thought it had a good case and believed that $4,000.00 in settlement was all it should offer under its right "to make such settlement * * * as may be deemed expedient by the Company."

The Coroner of Greenville County investigated the accident and ordered an inquest, which was held several days later. Six witnesses testified at the inquest, and the Coroner's jury returned the following verdict: "George Roberts came to his death by careless driving on the part of E. Howard." The Coroner bound Elias Howard over to the Court of General Sessions for Greenville County on a charge of reckless homicide. When the General Sessions Court convened, the Solicitor sent to its grand jury a bill of indictment charging the driver of the automobile with reckless homicide. The grand jury returned a "no bill".

American promptly undertook an investigation of the circumstances surrounding the accident and the investigator consulted with Haynsworth & Haynsworth, a thoroughly reliable, experienced and competent firm of attorneys, who made some suggestions as to a further investigation. A civil action was brought by the Administrator of Roberts, under the South Carolina Lord Campbell's Act, Code 1942, §§ 411, 412, against Elias Howard seeking $50,000.00 damages on account of the alleged wrongful death of Roberts, for the benefit of deceased's surviving relatives, his father, mother, three brothers and a sister. The case was then placed by American in the hands of Haynsworth & Haynsworth, who were thereafter solely responsible for its conduct.

Very shortly thereafter, Haynsworth and Haynsworth wrote to Elias Howard that since the damages sought in this ac-

tion were $50,000. and since the policy limit was only $5,000., Howard, if he so desired, could retain counsel of his own. Howard then employed as his personal attorneys the law firm of Leatherwood and Walker, who cooperated with Haynsworth & Haynsworth in the defense of this suit.

At several conferences between counsel on both sides, attempts were made to effect an amicable settlement. Offers of $2,500., then $3,000. and later $3,500. and $4,000. were declined by Mr. Hicks, counsel for Roberts' Administrator. On January 22, 1948, a little more than three months after the institution of the suit, Mr. Hicks offered to settle for $5,000., the offer to remain open only until Noon on February 3. It seems that this offer included all liability resting on Elias Howard resulting from the accident. Messrs. Haynsworth and Haynsworth verbally declined this offer of $5,000. for a settlement. On February 9, 1948, Messrs. Leatherwood and Walker, counsel for Elias Howard, by Mr. D. B. Leatherwood, addressed a letter to Haynsworth & Haynsworth, in which he stated that he had been advised by Mr. Hicks that Haynsworth & Haynsworth had declined the offer of January 22, but that Mr. Hicks had agreed with Mr. Leatherwood to extend the time for acceptance until February 20. Mr. Leatherwood then stated that it was possible that a verdict might be rendered against the defendant in the then pending action in excess of $5,000. He thereupon, on behalf of his client, requested Haynsworth & Haynsworth to settle the case upon the basis offered by Mr. Hicks, and advised that otherwise Elias Howard would expect to hold American responsible for whatever verdict might be rendered whether or not in excess of the policy limit. On February 27, Mr. Leatherwood again wrote to Haynsworth & Haynsworth, advising that he had obtained an extension of Mr. Hicks' offer to March 10, again demanded that it be accepted, and advised that if the offer was not accepted he "would consider that the full responsibility for the final outcome of said action was assumed by your Company."

On March 3, 1948, Haynsworth & Haynsworth replied to Mr. Leatherwood's letters, advising him they had earlier declined to accept Mr. Hicks' offer to settle for $5,000., that they felt it was "out of line in view of the very questionable liability in the case," and that they had gone over the matter carefully and felt they were acting in the interests of all parties concerned in declining the Hicks offer.

This action, under the South Carolina Lord Campbell's Act, was duly tried and resulted in a verdict in favor of the plaintiff in the sum of $7,000. No appeal was taken. On this judgment, American paid $5,000. (and costs). The remainder of the judgment, $2,000. was paid by Elias Howard.

On or about August 19, 1948, the Administrator of Roberts instituted a civil action against Elias Howard under the South Carolina Survival Act, Code 1942, § 419, for conscious pain and suffering endured by Roberts before his death. Damages in the sum of $25,000. were sought. Later the complaint was amended to include a claim for property damage.

On September 1, 1948, American commenced the instant civil action for a declaratory judgment, seeking thereby relief from any other or further liability or obligation under its policy contract on the ground that it had agreed to pay $5,000.00 of the verdict for $7,000. in the death case and whatever amount might be determined as property damage. (As has been indicated, American did pay $5,000. and $48.00 costs.) Then on September 24, 1948, Howard brought an action in the State Court against American to recover $2,000., the amount of the judgment in the death case above $5,000., which he had been forced to pay in satisfaction of an execution, and for $1,000. claimed expenses. In the last mentioned action Howard alleged that American had received a bona fide offer of $5,000. to settle all claims and demands growing out of the accident for bodily injuries and property damage, and that American had negligently failed to accept the offer in total disregard of its obligation to the Insured and without proper regard

for the rights of the Insured under the policy contract. In other words, Howard claimed that American in a long chance effort to protect itself, forced Howard to take a highly probable chance of losing many thousands of dollars.

In the instant civil action by American seeking a declaratory judgment, the District Court held that American must defend on behalf of Elias Howard the civil action brought by the Administrator of Roberts against Elias Howard under the South Carolina Survival Act and must pay any judgment against Howard recovered therein; that American must pay to Elias Howard the $2,000. he paid on the judgment in the civil action brought under the South Carolina Lord Campbell's Act, and that American must pay the costs in the instant action instituted by American seeking a declaratory judgment as to its rights and liabilities under the policy contract.

In his opinion, the District Judge stated:

"Despite the persuasive argument of the Company's distinguished and able counsel, I am convinced that reason and prudence required the Company to settle all claims for personal injury and property damage for $5,000.00. There was slight, if any chance that the Company could improve its own position by failing to settle, while, on the other hand, such a course gravely imperiled the rights of the insured. As far as he was concerned, there was nothing to be gained and much to be lost by the Company's refusal to settle. In my opinion good faith in the performance of its contract obligations required the Company to settle and a failure to do so was negligence."

We agree with the District Court that, under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the law of South Carolina is here controlling. The leading case in South Carolina, which was twice before its Supreme Court, is Tiger River Pine Co. v. Maryland Casualty Co., 163 S.C. 229, 161 S.E. 491; Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346. In that case,

it was held that the insurer owes to the insured the duty of settling a personal injury claim covered by the policy if the settlement is the reasonable thing to do, or, that the insurer is liable to insured if the insurer's failure to settle is due to either fraud or bad faith or negligence. Mr. Justice Bonham there stated, 170 S.E. 348:

"If * * * its (insurer's) own interests conflicted with those of respondent (insured), it (insurer) was bound, under its contract of indemnity, and in good faith, to sacrifice its (insurer's) interests in favor of those of the respondent (insured)."

Two questions are presented to us on this appeal: (1) whether American is obligated to defend, on behalf of Elias Howard, the pending suit of the Administrator of Roberts, brought under the South Carolina Survival Act; and (2) whether, or to what extent, American is liable to Elias Howard for the $2,000. paid by him in settlement of the judgment in the suit under the South Carolina Lord Campbell's Act, and for any recovery against Howard in the pending suit under the South Carolina Survival Act.

We agree with the District Court that American is obligated to defend, on behalf of Elias Howard, the pending suit against him under the South Carolina Survival Statute. There is no merit in the contention of American that, having paid the limit of its coverage for personal injuries and having indicated its willingness to pay for any property damages recovered in this pending suit up to the limit of its property coverage, it has completely fulfilled its obligations under the policy contract.

Under the South Carolina law, if a judgment is recovered against Elias Howard in this pending suit, this judgment will be for a specified sum of money, without any separation of the amount awarded for the conscious suffering of Roberts before his death from the amount awarded for property damage. And clearly property damage, up to $5,000. is within the coverage clause of the policy designated as "Coverage B." American's obligation to defend this pending suit is none the less real be-

cause of the fact that any recovery for property damage will probably be inconsiderable in amount.

Nor do we agree with American that the undertaking to defend is only coextensive with the undertaking to defend under the policy's coverage. Provision II of the policy reads:

"As respects the insurance afforded by the other terms of this policy under Coverages A and B the Company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

This point was ably and extensively discussed in the opinion of the District Judge. We think it unnecessary to add much to what was there said. From that opinion we quote:

"To hold that the cited provisions of the policy contract limiting their application to coverages A and B, were intended to take back the positive and unambiguous obligation that 'the company shall (a) defend in his name and behalf *any suit against the insured* * * *, even if such suit is groundless, false or fraudulent,' would be to violate or disregard the well established legal principle that the words of a contract are to be accorded their plain and ordinary meanings, or else to hold the contract ambiguous and then construe it favorable to the author of the ambiguity.

"I agree most heartily with the portion of the opinion in Lumbermen's Mut. Cas. Co. v. McCarthy, [90 N.H. 320] 8 A.2d 750, 126 A.L.R. 894, cited in plaintiff's brief, which says, 'It seems to us that the primary obligation imposed upon the insurer was to pay the insured's legal liability for damages on account of the contingencies specified,' but I do not agree that the performance of that primary obligation dispensed with the necessity of performing the other obligation to defend suits, even if

the latter obligation be regarded as of minor importance after full performance of the first. I 'cannot assume, in the absence of express words, that such a result was in the contemplation of the parties to the contract of insurance.'

"I am in accord with the dissent of Branch, J., in the cited New Hampshire case, wherein it is said, ' * * * the majority opinion disregards the language of the policy and construes the promise of the Insurance Company to defend, not as an undertaking for the benefit of the assured, but as a stipulation for the benefit of the insurer.' 126 A.L.R. 898. The express language of the policy contract is that 'the company shall defend in the Insured's name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof.' The obligation to defend suits is entirely independent of the obligation to pay for bodily injuries and property damage. The two obligations are assumed in different paragraphs of the contract and under distinctive sub-heads. I hold that the policy means what it plainly says."

Let us suppose that a policy of the kind before us has a coverage of personal injuries only, with a limit of $5,000. The insured, while driving his car, inflicts on an individual severe, permanent and terrible injuries. The case, if tried in court, will be long and complicated. Could the insurer tender the insured $5,000. and wash its hands of the whole case? We hardly think so. The defense of such suits by the insurer is a valuable right of the insured for which he pays and to which he is entitled by the very words of the policy.

We note, too, in the brief of counsel for American: "The plaintiff is perfectly willing to undertake the defense of the Survival Act case if that be the wish of the assured and the direction of this Court. The most urgent necessity is for a declaration by this Court of the rights and responsibilities of the parties with respect to the payment of any judgment which might be rendered in the Survival Act case."

We feel compelled to reverse the holding of the District Court that, in refusing an offer to settle all liability in this case for $5,000., American has failed in its duty to insured and that, in consequence, American must pay to Elias Howard the sum of $2,000. he was required to pay on the judgment in the case under the South Carolina Lord Campbell's Act, and that American must pay any judgment recovered against Howard in the pending suit under the South Carolina Survival Statute. We think American is further obligated only to defend this pending Survival suit and to pay any part of a judgment therein (if one be recovered) that is fairly allocable to property damage, not to exceed the policy limit of $5,000.

A careful study of the record convinces us that American in no way breached its duty to insured, as that duty is outlined in the Tyger River case, supra, when American offered $4,000. to settle all liability arising out of the tragic accident and refused an offer of $5,000. made by Roberts' counsel for such a settlement. We cannot agree that, as the District Judge stated in his opinion, "Only a foolish optimism would prompt the refusal of such an offer of settlement" and that "Good faith in the performance of its contract obligations required the Company to settle and a failure to do so was negligence."

Upon notice of the accident, American promptly conducted, with assistance from Haynsworth & Haynsworth, what appears to have been a thorough investigation of the circumstances surrounding the accident. When the action was filed under the South Carolina Lord Campbell's Act, Howard was duly informed of the policy limit and told that he could, if he wished, retain his own counsel. Messrs. Leatherwood and Walker were thus retained and Haynsworth & Haynsworth fully cooperated with the Leatherwood firm. Certainly American acted properly, upon the filing of this action, in turning over the case, with full responsibility and power, to Haynsworth & Haynsworth, a law firm of competent, reliable and experienced lawyers. Repeated attempts were made to settle with Mr. Hicks,

counsel for the Administrator of Roberts, by offers of $2,500., $3,000., $3,500. and finally $4,000. The District Court held (quite properly, we think,) "The Company's counsel defended that suit (under the South Carolina Lord Campbell's Act) and did a good job of it as is evident from the smallness of the verdict. The Company's counsel decided against an appeal from the judgment entered on the verdict, after a motion for a new trial had been denied, and, I think, wisely so." American even had a representative at the Coroner's inquest, though he took no part in the examination of witnesses, and the testimony there taken was transcribed and preserved.

■ This brings us to the final question in this case—whether American failed in is duty under the policy when it refused an offer of settlement for all liability arising from the accident upon the payment of $5,-000. We think not.

It appears that Messrs. Haynsworth & Haynsworth, after a thorough study of the case, arrived at their approval of $4,000. as its settlement worth, without regard to the policy limits and with no thought of placing the selfish interests of American above the interests of assured. In the light of the demands of Mr. Leatherwood, on behalf of Howard, for a complete settlement at the figure of $5,000., Haynsworth submitted their entire file (omitting their own opinion and recommendations) to Ben C. Thornton, a lawyer of unquestioned competence and experience. The opinion of Thornton coincided with that of Haynsworth & Haynsworth. At the trial of the instant case, Mr. Stephen Nettles, another competent lawyer with wide experience in personal injury cases, testified that if he had been handling the case, he would have taken the same position in the settlement negotiations as that taken by Haynsworth & Haynsworth. Pinkney Cain, another competent and experienced lawyer, was present in the court-room, ready to testify as to his opinion of the manner in which the settlement negotiations were conducted. Other members of the bar of Greenville were on call to give their opinions. Cain

was excused and these other lawyers were notified not to appear when the District Judge stated: "I am not going to handle this case on the basis or condition of whether we have reputable attorneys and whether they acted with reasonable prudence or not." It is apparent that these lawyers would have corroborated the testimony of Stephen Nettles.

No countervailing evidence of this type was introduced on behalf of Elias Howard, whose counsel seem to rely, as did the District Court, on the proposition that the facts and circumstances of the accident which resulted in the death of Roberts in themselves warrant the conclusion that American was negligent in not accepting the settlement offer of $5,000. With that we cannot agree. A fair guage or standard by which the conduct of Messrs. Haynsworth & Haynsworth in the settlement negotiations here involved, can be appraised, prospective as that conduct had to be in contemplation of the possibilities and probabilities of the outcome of the litigation, would seem to be the judgment of other reasonable and competent lawyers who by experience were familiar with local law and local jury verdicts in cases similar to the one in question.

In Blue Bird Taxi Corporation v. American Fidelity & Casualty Co., D.C., 26 F. Supp. 808, 810, District Judge Myers in a case quite similar to that before us, decided in favor of the insurer, discussed the Tyger River case, supra, and stated: "A number of reputable attorneys, experienced in the handling of damage suit defenses under indemnity contract, testified that in their opinion, the handling of the matter by the attorneys for the defendant indemnity company was reasonable, and with due regard of the interests of the plaintiff Taxi Corporation,—both in the refusal of the compromise offer of settlement and in the handling of the appeal."

■ Lawyers representing liability insurers of motor users are not required to be prophets who can accurately foretell the results of litigation in personal injury

cases arising out of automobile accidents, nor does a mere mistake of judgment by these lawyers impose liability on these insurers beyond the policy limits of coverage. If these lawyers act reasonably, in good faith and without negligence in refusing proffered settlements, they, and the insurers they represent, have fully lived up to the duties imposed upon them. See, Bedford v. Armory Wholesale Grocery Co., 195 S.C. 150, 10 S.E.2d 330; Lynch v. Pee Dee Express, 204 S.C. 537, 30 S.E.2d 449; Farmers Gin Co. v. St. Paul Mercury Indemnity Co., 186 Miss. 747, 191 So. 415; Burnham v. Commercial Casualty Insurance Co., 10 Wash.2d 624, 117 P.2d 644.

We have adverted at some length to the duty of the insurer under the policy here to safeguard the interests of the insured. It should be remembered, though, that the premium on such policies varies with the insurer's maximum limit of liability under the policy. Accordingly, when the insurer fully lives up to its duty, there is no right in the insured to compel the insurer to offer the amount of its maximum limit in order to effect the amicable settlement of a claim against the insured and to protect the insured against a possible judgment in excess of the policy limit. Insured can readily secure all needed protection by purchasing, and paying for, a policy with a high limit of liability on the insurer.

The judgment of the District Court is reversed and the case is remanded to that court with instructions to enter a declaratory judgment to the effect that American is obligated to defend the pending action against Elias Howard under the South Carolina Survival Statute and to pay, should a judgment therein be recovered against Howard, such part, and only such part, of this judgment as may be properly allocated to property damage apart from damages awarded for the pain and suffering of Roberts; and, further, that American is not obligated to repay to Elias Howard the $2,000. paid by him on the judgment in the suit brought under the South Carolina Lord Campbell's Act.

Reversed and remanded.