**E. A. COPELAND, as Administrator of the Estate of Elbert A. Simmons, deceased, Plaintiff,**

v.

**PETROLEUM TRANSIT COMPANY, Inc., Defendant.**

**No. AC–834.**

United States District Court
E. D. South Carolina,
Columbia Division.

Aug. 28, 1964.

Baskin & Cothran, Bishopville, S. C., Henry H. Edens, Columbia, S. C., Wright, Scott, Blackwell & Powers, Florence, S. C., for plaintiff.

Turner, Padget, Graham & Laney, Columbia, S. C., Ozmer L. Henry, Lumberton, N. C., for defendant.

SIMONS, District Judge.

This is an action for wrongful death brought, pursuant to Section 10–1951 et seq., Code of Laws of South Carolina, 1952, by the Administrator of the Estate of Dr. Elbert A. Simmons, deceased, who died as a result of injuries sustained in an automobile-truck collision on October 5, 1961. The Complaint alleged that the deceased's death was proximately caused by the negligence and recklessness of Petroleum Transit Company through its agents and servants. The action was originally brought against Petroleum Transit Company and Oscar Howell, the driver of the truck at the time in question. At the commencement of the trial the plaintiff moved for a non-suit with prejudice as to the defendant Howell and, there being no objection the Court granted the motion.

The case was tried before me without a jury under Rule 39[b] of the Federal Rules of Civil Procedure, and I find the facts specially and state my conclusions of law therefrom as follows:

## FINDINGS OF FACT

1. The collision in question occurred at the intersection of U. S. Highway 401 and South Carolina Highway 341 in Lee County, South Carolina, between 4:00 and 5:00 p. m. on October 5, 1961.

2. The plaintiff's intestate, Doctor Elbert A. Simmons, who at the time was eighty [80] years of age, was traveling in an easterly direction along South Carolina Highway 341, with his wife as a passenger in the front seat of his automobile, approaching the intersection with U. S. Highway 401, approximately eight [8] miles from Lamar, South Carolina.

3. Oscar Howell, an employee of defendant, acting within the scope of his employment and duties, was proceeding in a southerly direction on Highway 401 from Lamar, S. C., toward Sumter, S. C. in a Mack tractor pulling an asphalt tanker. He was alone at the time of the collision.

4. Traffic traveling East on Highway 341, the direction in which plaintiff's intestate was traveling, is required to stop at the intersection with Highway 401. There is a stop sign on the southern side of Highway 341 approximately forty [40] feet West of its intersection with 401, which required Dr. Simmons to stop before entering the intersection. In addition there is a "Stop Ahead" sign on Highway 341, approximately one-tenth [1/10th] of a mile West of the intersection with Highway 401.

5. The posted and established speed limit for both Highway 401 and 341 is fifty-five [55] miles per hour. Both highways are two lane asphalt paved roadways approximately twenty-two [22] feet wide. They intersect at right angles. Four [4] cultivated fields, planted in soybeans at the time of the accident, surround the intersection. The weather was clear and dry, and visibility was good.

6. As defendant's vehicle approached the intersection Dr. Simmons' vehicle was approaching from the truck driver's right. As Dr. Simmons approached the intersection defendant's truck was approaching from Dr. Simmons' left. The two vehicles reached the intersection at approximately the same time. In the field located in the northwest quadrant of the intersection [between the approach avenues of the vehicles] there is located an electrical power substation sixty [60] feet from the western edge of Highway 401 and forty [40] feet from the northern edge of Highway 341. The substation contains several transformers mounted on poles, and is enclosed with a fence measuring forty-six [46] feet on its eastern and western sides and fifty [50] feet on its northern and southern sides.

7. An old railroad bed, the bank of which extends four or five feet above the ground level, runs parallel to Highway 401 North of the intersection on the western side of 401. The eastern edge of the bank of the railroad bed is two hundred ten [210] feet from the intersection. To clarify, the bank was on the right hand side of the driver of the truck as he approached the intersection, running approximately parallel with the truck's lane of travel and intersects perpendicular with Highway 341 at a point two hundred ten [210] feet from the intersection. Traffic approaching the intersection traveling easterly on 341 is not visible to traffic approaching the intersection from the North on 401 when the 341 traffic is beyond the bank [two hundred ten [210] feet].

8. In accordance with the testimony of the Highway Patrolman who investigated the accident a short while after it occurred, I find that the driver of each vehicle could have seen the other vehicle without any difficulty, if Dr. Simmons had come to a complete stop, as contended by plaintiff.

9. In the collision, the front of the truck collided with the left rear of deceased's automobile in the right lane of 401 for southbound traffic, and the right lane of 341 for eastbound traffic. After the impact the automobile continued along 341 for approximately 171 feet, coming to rest at the edge of a bean field on the southern side of Highway 341 across the intersection. The truck veered to the left and traveled approximately two hundred forty [240] feet, overturning in a bean field South of Highway 341 and East of Highway 401, across the intersection in the direction in which the truck was originally headed. As a result of the collision the deceased was thrown

out of his car and suffered fatal injuries. There were no skid or brake marks on either highway made by the vehicles prior to the collision; however, there were marks from the collision in the center of the intersection, and skid marks made by the truck after the impact.

10. From the evidence presented at the trial, and particularly including the testimony of Clifton Puryear, a highly creditable, impartial eye witness to the accident, who was traveling North on Highway 401, approximately three hundred [300] yards South of the intersection when the accident occurred and who observed both vehicles before and after the collision, I find that the defendant's driver approached the intersection within the speed limit, in his proper lane, slowed his truck, looked to the right and left, observed no traffic at the intersection, then proceeded on at a reasonable speed. Defendant's truck struck Dr. Simmons' automobile after the latter had approached and entered the intersection at a high rate of speed, and had failed to stop in obedience to the stop sign.[1]

11. If Dr. Simmons had stopped as required before entering the intersection, and had looked to his left for traffic approaching from the North along 401, he would have had an unobstructed view of the approaching truck for two-tenths [2/10ths] of a mile, and would have been able to see the top portion of the truck for an additional one-tenth [1/10th] of a mile.

12. If Dr. Simmons had stopped at the stop sign, and had then proceeded across the intersection at a slow or reasonable rate of speed, the impact of the collision [the left front portion of the truck struck the left rear portion of his vehicle] would have knocked the automobile around in a counter clockwise movement or on along the highway in the direction that the heavier truck was traveling. Instead, the Simmons car after the impact did not veer from its path, but traveled on in an easterly direction along 341 for approximately 171 feet from the intersection in such a manner that the eye-witness Puryear did not realize that there had been an actual collision, until he arrived at the intersection [pp. 109–110 of Transcript]. The conclusion is inescapable that Dr. Simmons was traveling at a high rate of speed when he entered the intersection.

13. There was evidence at the trial that the driver of the truck stated to plaintiff's witness Marion Mims some time after the accident that he "did not see the car until it was under his truck". This statement was objected to by defense counsel as not being part of the res gestae, so as to come within the exception to the hearsay rule[2], and I reserved ruling on the objection. Although I still have serious doubts about the admissibil-

---

1. Mr. Puryear testified [at pp. 109–119 of Tr.] as follows:
   "Q And as you proceeded toward the intersection, will you describe for us what you saw occur?
   "A Well, as I was proceeding on 401 towards the intersection, I was meeting this transfer truck and looking at the intersection and the approaching truck. I saw this car proceed across the intersection at a very high rate of speed. About at that point, the truck veered to his left across the road in front of me, into the field, to my right—to his left but to my right.
   "Q Mr. Puryear, I have one other question: What do you mean when you say that the car went across the intersection at a high rate of speed or very high rate of speed, however your words were?

   "A As I was approaching the intersection, meeting the truck, this car went across the intersection at a very high rate of speed, and the speed I could not determine.
   "Q You could not determine?
   "A I could not determine, but I would say it would be better than 50 miles an hour."
   He further testified [p. 111 of Tr.] that he did not notice anything unusual about the speed of the truck as it approached the intersection, and that it was in its right hand lane of the road before the accident.

2. Marshall v. Thomason, 241 S.C. 84, 127 S.E.2d 177.

ity of this hearsay testimony, I have considered it in arriving at my conclusions. Furthermore, there is little or no difference between what the driver allegedly told Mims and his testimony from the stand. The driver admittedly did not see Dr. Simmons' car until it was in the intersection. He testified that:

"All at once that automobile shot out there in front of me". * * *

"It was right close. I was right at the intersection." [P. 80 of Tr.].

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of these actions.

2. The rights and duties of the parties hereto are governed by the laws of the State of South Carolina, the place where the collision occurred.

3. The Complaint alleged that Dr. Simmons' death was due to the negligence and recklessness of Oscar Howell in the operation of the defendant's truck. The Answer denied any negligence and recklessnesss on the part of defendant's agent and servant Oscar Howell, alleged that the collision was solely the result of the negligence and recklessness of Dr. Simmons, and pleaded the affirmative defense of contributory negligence and recklessness. Therefore, the legal issues in this intersection accident case pertain to the negligence and recklessness of the drivers of the vehicles involved and proximate cause.

4. Section 46-252 of the South Carolina Code of Laws for 1962 reads as follows:

"*Through Highway.*—Every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing it and when stop signs are erected as provided in this chapter is a '*through highway.*' "

Section 46-423 reads as follows:

"Vehicle entering through highway or stop intersection.—The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on such through highway shall yield the right of way to the vehicle so proceeding into or across the through highway.

"The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

The Supreme Court of South Carolina has said that, if one fails to look for approaching traffic before entering an intersection, he is guilty of negligence. Branham v. Wolfe Transportation Company, 170 S.C. 164, 169 S.E. 889. The Court has also held that, if one looks and sees a vehicle approaching, he is negligent as a matter of law in not yielding the right of way and in undertaking to cross the intersection. Lawter, et al. v. War Emergency Co-Operative Ass'n, et al., 213 S.C. 286, 49 S.E.2d 227. In Horton v. Greyhound Corporation, 241 S.C. 430, 128 S.E.2d 776, the Court held that "[n]egligence may be deemed a proximate cause of an injury only when without such negligence the harm would not have occurred or could have been avoided." The South Carolina Supreme Court has further held that one entering an intersection of an express street or highway from a side or cross road, in order to become entitled to the right of way, must have entered the intersection in a lawful manner, otherwise, he cannot

ordinarily recover damages, unless his violation is found not to have been a proximate cause of an ensuing accident. Pruitte v. Machen, 215 S.C. 13, 53 S.E.2d 866.

■ I find that the collision in question was proximately caused by the sole negligence and recklessness of the deceased in failing to keep a proper lookout, in failing to stop as required by South Carolina Law, and by proceeding into the intersection when such could not be accomplished without constituting an immediate hazard. §§ 46–252 and 46–423, supra.

■ 5. The evidence in the record fails to establish by a preponderance of the testimony that the driver of the defendant's truck was guilty of negligence or recklessness, which was the proximate cause of this accident. The only reasonable inference indicating negligence of the defendant's driver was that he failed to maintain a proper lookout as he approached the intersection, which is based on the testimony that he did not see the Simmons car until it was actually entering the intersection. [pp. 54 & 80 of Transcript]. Assuming that defendant's driver failed to keep a proper lookout as alleged by the plaintiff the contributory negligence of plaintiff's intestate would bar recovery here. The Supreme Court of South Carolina made the following observation in Lawter v. War Emergency Co-Op., et al., supra:

"The argument which appellants' [Plaintiff] counsel make in seeking to establish negligence on the part of the driver of the tanker in failing to keep a proper lookout applies with equal force to the driver of the cotton truck [Plaintiff]. As stated in the recent case of Bishop v. Atlantic Coast Line Railway Co., [213] S.C. [125,], 48 S.E.2d 620, 627, 'it would seem illogical to hold that due care by respondents would have prevented the accident and yet ignore the correlative fact that due care by the decedent would also have prevented it.'" [213 S.C. p. 297, 49 S.E.2d p. 231].

■ Dr. Simmons, in the instant case, would have seen the truck approaching at the intersection if he had stopped at the stop sign, as required by South Carolina law, and had made a proper observation of the on-coming traffic using due care. The Court has said, in discussing the duty of a motorist proceeding through a stop sign into an intersection, that such duty is not one of merely looking, but is one of observation; that the motorist must look in such an intelligent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others could have seen, under like circumstances. Lynch v. Pee Dee Express, Inc., 204 S.C. 537, 30 S.E.2d 449. It must be assumed that, even if the deceased had stopped at the stop sign, the driver of the truck would have entered the intersection in the same manner, and, as the truck and the car entered the intersection at about the same time, the deceased would have been guilty of contributory negligence, even if the driver were guilty of not maintaining a proper lookout.

6. Plaintiff relies heavily on the case of Warren as Admr. v. Watkins Motor Lines, et al., 242 S.C. 331, 130 S.E.2d 896. However, the Court does not feel that this case is controlling under the facts of the instant case. In the Warren case the accident occurred during nighttime, there was much conflicting testimony as to speed of both vehicles, whether plaintiff's vehicle stopped at the stop sign, how far the defendant truck was from the intersection when plaintiff's vehicle entered the intersection and other conflicting testimony. The main question before the Supreme Court was whether lower court should have directed a verdict for the defendant. The Court, after stating that it must consider testimony in the light most favorable to respondent [plaintiff], held that if there is a conflict in testimony as to whether automobile on through highway was approaching so closely as to constitute immediate hazard, or if conclusion to be drawn therefrom is doubtful or uncer-

tain, Court will not decide question as one of law but must submit the question to triers of fact.

7. As the trier of the facts, I find the testimony failed to establish by a preponderance of the evidence any lack of care or actionable negligence on the part of defendant's driver; but, even assuming that he was negligent or careless in any particular, it definitely establishes that the deceased himself was careless and negligent; and that such acts on his part contributed to the collision in which he sustained fatal injuries as a direct and proximate cause thereof; and without which the accident would not have occurred.

8. There is no evidence of any wilful, wanton, malicious or reckless acts or delicts on the part of defendant.

In accordance with the foregoing findings and conclusions, it is hereby

Ordered that plaintiff's Complaint be dismissed, and that judgment be entered in favor of defendant, Petroleum Transit Company.

