### 17493

Myrtle B. SPENCER, as Administratrix of the Estate of Gilbert Blease Spencer, Appellant-Respondent, v. Elbert Boone KIRBY, Respondent-Appellant

(106 S. E. (2d) 883)

*Jonathan Z. McKown, Esq.,* of Gaffney, *for Appellant-Respondent,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, and *C. E. Saint-Amand,* of Gaffney, *for Respondent-Appellant,*

*Jonathan Z. McKown, Esq.,* of Gaffney, *for Appellant-Respondent, in Reply,*

January 26, 1959.

TAYLOR, Justice.

This appeal arises out of an action brought in the Court of Common Pleas for Cherokee County by the Administratrix of the Estate of Gilbert Blease Spencer against the defendant, Elbert Boone Kirby, for damages allegedly arising out of the death of the deceased through an automobile collision.

The case was tried before the Honorable T. B. Greneker and a jury, resulting in a verdict for plaintiff in the amount of $1,350.00 actual damages and $3,650.00 punitive damages. Timely motions for nonsuit, directed verdict, and judgment *non obstante veredicto* or in the alternative for a new trial were made and all denied except the last which was granted and a new trial ordered upon the ground that the foreman of the petit jury had been a member of the grand jury when a "No Bill" was returned on an indictment charging the defendant, Elbert Boone Kirby, with the crime of murder for the death of plaintiff's intestate arising out of the same collision. At the hearing of the motion for a new trial. it was stipulated between the parties that the foreman of the petit jury had been a member of the grand jury when the indictment against the defendant was considered and a "No Bill" found. No affidavits or evidence were submitted by attorneys for either side to support or resist the motion on the question of disqualification of the juror.

Plaintiff now appeals from the Order of the Presiding Judge granting the motion for a new trial, and defendant appeals from the Order refusing his motion for a directed verdict and judgment *non obstante veredicto*.

In denying the motion for judgment *non obstante veredicto,* the trial Judge stated that, in his opinion, the case was

one requiring submission to the jury; but with respect to the defendant's contention that one of the jurors was disqualified by reason of his having been a member of the grand jury which had found a "No Bill" upon the charge in the indictment arising out of the same collision, he was of opinion that "the parties to this action should have a trial before a jury of which no person has prejudged the case"; that the motion for a new trial should, therefore, be granted, and ordered the case restored to Calendar 1, Court of Common Pleas for Cherokee County for a new trial.

Appellant contended and the trial Judge apparently considered that Title 38-103, Code of Laws of South Carolina, 1952, which provides that "No member of the grand jury which has found an indictment shall be put upon the jury for the trial thereof." was applicable to the situation at bar. With this we do not agree as the foregoing has reference to trial of one charged with the commission of a crime and has no application to instant case.

Title 38-202, Code of Laws of South Carolina, 1952, provides:

"The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror therein to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion or is sensible of any bias or prejudice therein and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause and another shall be called."

It is provided in Section 38-203, Code of Laws of South Carolina, 1952, that:

"All objections to jurors called to try prosecutions, actions, issues or questions arising out of actions or special proceedings in the various courts of this State, if not made before the juror is empaneled for or charged with the trial of such prosecution, action, issue or question arising out of an action

or special proceeding, shall be deemed waived and if made thereafter shall be of none effect."

The usual inquiry was made of the venire with respect to relationship of the parties, but no inquiry was made as to whether they had an interest in the cause, had expressed or formed an opinion thereabout, or were sensible of any bias or prejudice therein as set forth in Title 38-202, Code of Laws of South Carolina, 1952, and no request therefor was made by counsel; neither was there any objection to the qualifications of any of the jurors before they were empaneled.

"No irregularity in any writ of *venire facias* or in the drawing, summoning, returning or empanelling of jurors shall be sufficient to set aside the verdict, unless the party making the objection was injured by the irregularity or unless the objection was made before the returning of the verdict." 38-214, Code of Laws of South Carolina, 1952.

Upon motion for a new trial based upon disqualification of one or more of the jurors, it is incumbent on movant to show (1) the fact of disqualification, (2) that such disqualification was unknown before the verdict, and (3) that movant was not negligent in failing to make discovery of the disqualification before verdict. See, *State v. Jones,* 90 S. C. 290, 73 S. E. 177; *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505.

In instant case no showing whatever was made except that it was stipulated between the parties that the foreman of the petit jury had previously served as a grand juror at the time a "No Bill" was found against the defendant. There was no objection to the qualifications of any of the jurors interposed prior to their being empaneled or before the returning of the verdict, no showing that such was unknown before the verdict, that they were not negligent in failing to make discovery of the disqualification before the verdict, or that injury had been suffered thereby. In fact, lack of knowledge is not contended, and defendant could not have been prejudiced thereby as the grand jury of which

the juror was formerly a member returned a "No Bill" as to defendant. Had defendant exercised ordinary care as to the qualifications of the jurors, it would have been evident that this juror has served as a member of the grand jury when the indictment was under consideration as such membership is a matter of public record. One will not be permitted to take his chances upon a favorable verdict and upon disappointment have the verdict set aside upon a technicality; *State v. Johnson,* 66 S. C. 23, 44 S. E. 58; *State v. Harreld,* 228 S. C. 311, 89 S. E. (2d) 879; *State v. Rayfield, supra.* Of interest on this question are *State v. Robertson,* 54 S. C. 147, 31 S. E. 868; *Mew v. Charleston & S. Ry. Co.,* 55 S. C. 90, 32 S. E. 828; *State v. Johnson,* 123 S. C. 50, 115 S. E. 748; *Sellars v. Collins,* 212 S. C. 26, 46 S. E. (2d) 176.

We are, therefore, of opinion that the Order granting a new trial upon the ground of disqualification of one of the jurors must be set aside.

There remains for determination the question of whether or not the Court erred in refusing defendant's motions for a directed verdict and judgment *non obstante veredicto.*

To support his contention that the trial Judge erred in not granting his motions for a directed verdict and judgment *non obstante veredicto,* defendant relies upon Section 46-424, Code of Laws of South Carolina, 1952, which reads as follows:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."

It being contended that the only reasonable inference to be drawn from the evidence is that plaintiff's intestate came out of the private driveway without stopping thereby failing to yield the right of way as required by the statute.

On the 29th day of January, 1956, the defendant, while driving along a Farm to Market highway, collided with a car driven by plaintiff's intestate shortly after it had entered the highway from a private driveway. The collision occurred

on a slight curve, near the crest of a hill. The deceased had entered the highway from defendant's right and proceeded across to defendant's left side of the road where the cars met head on with plaintiff's intestate heading in the direction from which defendant's car was coming, the left front of deceased's car coming in contact with the right front of defendant's car. Skid marks 123 feet long on a dry highway indicated that defendant's car instead of following the curve of the road went straight to the point of impact where the two cars met head on; and the car of deceased was driven back 69 feet in the opposite direction from which it was traveling.

One witness, B. T. White, a State Forester, the only living eyewitness except the defendant, testified that defendant's car passed him approximately .2 of a mile from the point of impact, traveling on the wrong side of the road, and "running awfully fast * * * I would say a hundred or better"; and that at the time of collision he was .1 of a mile away.

Defendant, who was familiar with the highway, testified that he was traveling approximately 55-60 mles per hour, that plaintiff's intestate without stopping pulled out from the driveway 150 feet in front of him, and that he pulled to the left in an effort to avoid the collision. He further testified that there is a bank on the right side six to eight feet high which would block the vision of one coming out of the driveway until reaching the highway where the driver could see approximately 200 feet in the direction from which defendant was traveling. Later, upon cross examination, defendant's testimony that the deceased had not stopped before entering the highway, was considerably weakened when he admitted he did not see deceased until he was half way across the highway, as is evidenced by the following:

"Q. He was half way across the road when you first saw him.

"A. That's right.

"Q. That's exactly right * * *"

In the light of conflicting testimony or if the conclusion to be drawn therefrom is doubtful and uncertain, the Court will not decide the question as one of law and it must be submitted to the triers of the facts. *Lawter v. War Emergency Cooperative Ass'n,* 213 S. C. 286, 49 S. E. (2d) 227.

It is well established that in passing upon a motion by defendant for a directed verdict, the testimony must be viewed in the light most favorable to plaintiff, and if more than one reasonable inference can be drawn or if the inferences to be drawn from the testimony are in doubt, the case should be submitted to the jury. *Lineberger v. City of Greenville,* 178 S. C. 47, 182 S. E. 101; *Lynch v. Pee Dee Express, Inc.,* 204 S. C. 537, 30 S. E. (2d) 449.

The violation of an applicable statute is negligence *per se,* but in order to prevail, defendant must go further and show that the violation contributed as a proximate cause to the injury. Further, the statute must be given a reasonable construction. One about to enter upon a highway from a driveway or private road would not be required to wait unreasonably upon an oncoming vehicle traveling slowly and approaching from a great distance; but the requirement to "yield" alerts one to possible danger and requires the use of one's senses to apprehend that possible danger. Under certain circumstances, it may be incumbent upon one to stop before entering the highway while under other circumstances a slowing down would be sufficient to "yield" to oncoming traffic; and conceivably, under different circumstances, one might "yield" without even slacking his then speed, but under any and all circumstances, he would be required to exercise such care as a reasonable and prudent person would exercise under such circumstances. The circumstances of each case must govern, and this ordinarily becomes a question for the jury.

In the recent case of *Green v. Sparks,* 232 S. C. 414, 102 S. E. (2d) 435, 439, this Court had under consideration the

same statute and citing *Chapman v. Associated Transport, Inc.,* 218 S. C. 554, 63 S. E. (2d) 465-469, stated:

" 'The violation of an applicable statute is negligence *per se,* and whether or not such breach contributed as a proximate cause to plaintiff's injury is ordinarily a question for the jury. *Eickhoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010; *Lawrence v. Southern Ry.-Carolina Division,* 169 S. C. 1, 167 S. E. 839; *Dickson v. Inter-Carolinas Motor Bus Co.,* 161 S. C. 297, 159 S. E. 625.' "

Defendant's own testimony, heretofore referred to, that one situated as plaintiff's intestate was could see down the highway only after he had emerged from the cut and then not more than 200 feet and further that defendant did not see plaintiff's intestate until he was half way across the highway, when considered in conjunction with that of the only disinterested eyewitness, whom defendant had just passed and who was a little more than 500 feet behind him when the collision occurred, to the effect that defendant was traveling at a speed of 100 miles per hour or greater, the jury could have inferred that the collision was proximately caused by the gross negligence and recklessness of defendant in driving at an excessive rate of speed, thereby traversing the visible part of the highway (200 feet) in an unexpected and unreasonably short period of time. Certainly when we reflect that a car traveling at 100 miles per hour moves at the rate of 146 feet per second and visibility being only 200 feet, time becomes a most important element to be considered in determining whether a driver has exercised ordinary or due care. " 'It is an element all too likely to be overlooked when the situation is viewed in retrospect in the slower tempo of a trial or in the quiet of judicial chambers. He who would decide whether another has used ordnary care at a highway intersection should make that decision, not in his library, not by the aid of diagrams and models which he slowly moves by hand upon his diagrams, not in a place where a hundred feet seems no little distance,' but he must place himself as nearly as possi-

ble in the position of the person sought to be charged with negligence. *Glynn v. Krippner,* 8 Cir., 60 F. (2d) 406, 408." *Lynch v. Pee Dee Express, supra* [204 S. C. 537, 30 S. E. (2d) 451]. Certainly at the time of collision, plaintiff's intestate had completed crossing the highway and was lawfully upon his right side. Even had the jury concluded that plaintiff's intestate was guilty of negligence, such negligence would not bar, as a matter of law, plaintiff's intestate's right to recover if defendant was grossly negligent, reckless, and wanton. The jury could have concluded that the plaintiff's intestate was negligent in entering upon the highway as he did but that defendant was guilty of gross negligence and recklessness or negligent to the point of willfulness and wantonness in driving at a grossly excessive rate of speed under the known conditions, *Green v. Boney,* 233 S. C. 49, 103 S. E. (2d) 732. To hold otherwise would mean that one entering upon a highway from a private road or driveway would do so at his peril and become "fair game" for any vehicle upon the highway regardless of the conditions or manner in which it was being operated.

It was for the jury to say whether plaintiff's intestate exercised such care as an ordinary, reasonable person would have exercised under the circumstances or entered upon the highway heedlessly and without regard for the safety of others in violation of Section 46-424, which would constitute negligence *per se,* and, if so, whether or not such negligent act contributed as a proximate cause to the injury, thereby barring recovery as a matter of law or whether the injury was brought about through the gross negligent, reckless, and wanton acts of the defendant, *Field v. Gregory,* 230 S. C. 39, 94 S. E. (2d) 15; *Chesser v. Taylor,* 232 S. C. 46, 100 S. E. (2d) 540; *Green v. Sparks, supra.*

For the reasons heretofore stated, we are of opinion that the Court did not err in refusing the motions for a directed verdict and judgment *non obstante veredicto* but that the Order granting a new trial upon the question of disqualifica-

tion of the juror should be set aside and the verdict of the jury reinstated; and it is so ordered.

Affirmed in part; reversed in part.

LEGGE and MOSS, JJ., concur.

OXNER, J., concurs in result.

STUKES, Chief Justice (dissenting).

I regret to have to dissent but I am convinced that the verdict should have been directed for the defendant. In this view, the question of the qualification of the juror would not be reached.

I think that the only inference of which the evidence is susceptible is that the decedent entered the highway from a private driveway and got into the path of defendant's car in violation of Sec. 46-424 of the Code of 1952 which is as plain and mandatory as can be:

"The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."

Incidentally, the collision occurred on State highway 105, not a farm-to-market road. The State Highway map shows that it leads southeast from Gaffney.

This violation of the statute by the decedent, from which recklessness and wilfulness may be inferred, was the proximate cause of the collision, not the speed of defendant or his veering to the left in a last effort to avoid the car of the decedent which blocked his side of the highway. The evidence of the skid marks shows that defendant made timely application of his brakes, as he testified, in a vain effort to stop; and his car was new, having just received its 3,000-mile checkup. It is illogical to say that his speed proximately caused the wreck; conceivably, even greater speed would have avoided it because thereby he would have passed the driveway before decedent's emergence from it. It might as well be said that there would have been no collision had defendant remained at home and stayed off the highway. Granting his excessive

speed, it would not have resulted in injury to decedent if the latter had complied with the statute and yielded the right of way.

Apart from the foregoing, there is another consideration which brings the same result of reversal: If it be conceded that defendant's wilful and reckless speed and/or his driving to the left of the highway was a proximate cause of the collision, decedent's failure to yield the right of way, in violation of the statute, constituted wilfulness and recklessness and was a contributing proximate cause, which bars recovery for his death. It needs no citation of authority that contributory wilfulness and recklessness is a defense to wilfulness and recklessness.

The case of *Lawter v. War Emergency Co-operative Ass'n,* 213 S. C. 286, 49 S. E. (2d) 227, is, I think, clear authority for my conclusion, rather than that of the leading opinion. In it verdict was directed for the defendant on account of the failure of plaintiff's intestate to comply with the statute regulating the entrance from another highway into a favored highway, although it was less stringent in its requirements than the statute applicable to the present case. The statute involved in the *Lawter case* is now Sec. 46-423, Code of 1952, as follows:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the driver of all other vehicles approaching the intersection on such through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

The important difference in the statutes is readily seen. The last clause of the statute just quoted, "but such driver having so yielded may proceed" etc., is not included in the presently applicable statute.

The courts of North Carolina and Virginia have applied statutes similar to that which governs here with the result that I think is required in the instant case.

The holding of *Garner v. Pittman,* 237 N. C. 328, 75 S. E. (2d) 111, 117, is shown in the following excerpts from the opinion by now Chief Justice Winborne:

"Moreover, the operator of an automobile traveling upon a public highway in this State is under no duty to anticipate that the driver of an automobile entering the public highway from a private road or drive will fail to yield the right of way to all vehicles on such public highway, as required by the statute, G.S. § 20-156 (a), and, in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption, even to the last moment, that the driver of the automobile so entering the public highway from a private road or drive will, in obedience to the statute, yield the right of way. * * * Plaintiff contends, however, that there is evidence tending to show that the speed of the Sipe automobile was fifty miles per hour, reduced to 30 or 35 miles per hour, and, therefore, under the circumstances, unlawful. Even so, it is clear from the evidence that its speed would have resulted in no injury or damages to plaintiff but for the negligent act of defendant Pittman * * *." The Virginia statute follows:

"The driver of a vehicle entering a public highway from a private road or driveway shall, immediately before entering such highway, stop, and upon entering such highway shall yield the right of way to all vehicles approaching on such public highway." Code 1950, § 46-240.

The following is quoted from *Temple v. Moses,* 175 Va. 320, 8 S. E. (2d) 262, 266, which applied the foregoing statute in that case as I would ours here:

"Temple could not excuse the violation of his statutory duty by relying upon a presumption that a car operated upon the highway was being driven at a careful and prudent speed. The law requires such stop, and common sense, reasonable caution and prudence dictate that the driver of the stopped

vehicle, before entering the main artery of travel, shall look, and not enter into the public highway without seeing that such movement can be made with safety."

The facts in *Temple v .Moses* and those of the instant case are practically identical. As indicated in the quotation from the opinion, it was there contended, as here and as also in the North Carolina case, that defendant's excessive speed was the proximate cause of the collision. The contention was held to be untenable.

Plaintiff cites our case of *Green v. Sparks,* 232 S. C. 414, 102 S. E. (2d) 435, 438, which involved entry by the defendant into a highway from a private driveway. His duty under Code sec. 46-492 was defined as follows in the exhaustive opinion by Mr. Justice Moss: "It was the duty of the appellant, when he was backing out of the driveway into the highway to be vigilant, watchful and to anticipate and expect the presence of other vehicles upon said highway. It was his duty to ascertain whether the highway was clear so that he could enter the same without interfering with the use thereof by vehicles approaching on such highway." Whether defendant violated the statute and such was the proximate cause of the collision was held to be a jury issue despite his testimony that he stopped his car when it occupied not over five feet of the paved highway, leaving about fifteen feet for plaintiff to pass, and that upon seeing plaintiff he moved his car back into the driveway. There an issue of fact was, Did the defendant yield the right of way in compliance with the statute? Here there is no question under the evidence but that plaintiff's intestate did not yield the right of way or make any effort to do so. I think that plaintiff has no support in *Green v. Sparks.*

This decision will be an important precedent. All deplore the many highway accidents and deaths. It is common knowledge that a frequent cause is negligent entry upon a highway from a private road or driveway. Code sec. 46-492 is a legislative remedy; it should be enforced. Further concern of the legislature is evidenced by its Act No. 621 of 1956, 49

Stat: 1594, providing for controlled-access highways, of which the opening paragraphs of the preamble are as follows:

"Whereas, the General Assembly finds that traffic accidents are occurring on the public highways of the State in an ever increasing number, resulting in an irreparable loss of life, limb and property, and

"Whereas, many of such accidents are caused by vehicles entering the main through highways from private drives and side roads;" etc.

I would reverse and remand the case for entry of judgment for the defendant.