18078

John Q. ALLEN, as Administrator of the Estate of Gertrude H. Allen, Respondent, v. Louise W. HATCHELL, Appellant

(131 S. E. (2d) 516)

*Messrs. McCaskill & Thompson,* of Conway, *for Appellant,*

*Messrs. Gasque, Seals & Gasque,* of Latta, *for Respondent,*

460

June 6, 1963.

BUSSEY, Justice.

On the night of November 1, 1960, Mrs. Gertrude H. Allen was a guest passenger in an automobile driven by the appellant Louise W. Hatchell. Mrs. Allen was fatally injured in a collision between this automobile and one driven by one Tommy Lee Garner. This action for her wrongful death was brought by the plaintiff as administrator of Mrs. Allen's estate, for the benefit of her five surviving children, against Mrs. Hatchell and Garner, alleging that the death of Mrs. Allen was proximately caused by the joint and concurrent negligence, recklessness, heedlessness, willfulness, etc. of the two defendants in various particulars specified in the complaint.

Before the case was reached for trial, the plaintiff executed and delivered to the defendant Garner a written instrument by the terms of which for a consideration of $3,000.00 plaintiff covenanted that he would not prosecute the action further against the said Garner. Accordingly, the trial proceeded against Mrs. Hatchell alone, and resulted in a verdict for twenty-five thousand dollars actual damages. The defendant Hatchell has appealed on various exceptions, but, in our view of the case, it becomes necessary to consider only those that charge that the trial judge erred in two particulars in his instructions to the jury.

For a proper understanding of the questions, we do not think it necessary to set forth the alleged specifications of negligence, heedlessness or willfulness, set forth in the complaint, but do think it appropriate to set forth the specifications alleged as to Garner in the answer of the appellant

Hatchell, she pleading that the said alleged acts on the part of Garner were the sole, proximate cause of the collision and resulting death of Mrs. Allen. In brief, it was alleged that Garner was operating his automobile at an excessive rate of speed; failed to keep a proper lookout; failed to keep his automobile under proper control; failed to yield the right of way to the Hatchell automobile, which had already entered the intersection; operated his automobile on a public highway after dark without proper headlights burning; and that after discovering the Hatchell automobile in a position of peril, he failed to apply his brakes, to slow down, stop or turn aside and avoid the collision.

On the night of the fatal collision, the appellant with several passengers in her car was driving in an easterly direction on a secondary road, Highway S-17-54, and was approaching the intersection of this road with State Highway No. 38, at the entrance to which a stop sign was in place. Garner's approach to the intersection commenced with a U-turn on the state highway some three hundred feet, slightly more or less, south of the intersection. The collision occurred in the southeastern quarter of the intersection. The right front corner of the Garner car struck the right rear side of appellant's car in the vicinity of the rear door, quarter-panel and right rear wheel.

The Garner automobile laid down skidmarks of seventy-nine feet to the point of impact and for a distance of twenty-nine feet beyond. The Hatchell car left no skidmarks prior to the impact, but from the point of impact to the point where the Hatchell car came to rest there were scrubby, skidding around skidmarks for a distance of thirty-seven feet. The Hatchell car was completely turned around from the force of the impact, and came to rest headed west in the westbound lane of S-17-54, instead of the eastbound lane which it occupied at the time of impact.

There was conflicting testimony as to whether appellant stopped at the intersection. She and two of her passengers testified that she did stop. She and one passenger testified

that they looked in both directions and saw no approaching traffic, whereupon appellant proceeded slowly into the intersection. She did not see the Garner car prior to the collision. One of her passenger witnesses saw only a flash of light an instant prior to the collision.

The intersection where the collision occurred is located in the community known as Oak Grove and both the demonstrative evidence and the oral testimony reflect that there are a number of buildings in the vicinity of the intersection. It is undisputed that both highways are posted in the vicinity for a speed limit of thirty-five miles per hour.

The physical facts above related are quite sufficient to support an inference that the Garner automobile approached the intersection at a speed substantially in excess of thirty-five miles per hour, and the testimony of appellant's passenger witness would support an inference that the headlights on the Garner automobile were not turned on until an instant before the impact.

Garner himself was not called to the stand, but testimony of Mrs. Garner and another witness was to the effect that the Garner automobile was parked to the west of Highway 38, at a point three hundred feet, more or less, south of the intersection, headed in a southerly direction, for some five or ten minutes before the collision; that the Garner car made a normal start from a parked position, made a U-turn on Highway 38, and approached the intersection at a speed of about thirty or thirty-five miles per hour with its lights burning.

At the conclusion of the trial judge's charge to the jury, counsel for appellant called his attention to the fact that only the second paragraph of Section 46-423, Code of Laws 1952, had been read to the jury and requested that the entire section, consisting of two paragraphs, be read. The refusal of this request is the basis of the first exception.

The said section deals with a "Vehicle entering through highway or stop intersection" and the determination of

whether the refusal of the trial judge to charge the first paragraph of said section involves the consideration of several sections of the Code.

Section 46-252 of the Code defines a through highway as follows:

"Every highway or portion thereof at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing it and when stop signs are erected as provided in this chapter is a 'through highway.' (1952 Code Sec. 46-252; 1949 (46) 466.)"

Section 46-473 reads as follows:

"The Department with reference to State highways and local authorities with reference to other highways under their jurisdiction may designate through highways and erect stop signs at specified entrances thereto or may designate any intersection as a stop intersection and erect like signs at one or more entrances to such intersection. * * * (1952 Code Sec. 46-473; 1949 (46) 466.)"

Reading and construing the two sections together, we think it clear that the legislature did not intend that the erection of a stop sign or signs at a single intersection would constitute the portion of the dominant highway at such single intersection a "through highway." The erection of one or more signs at a single intersection only has the effect of making that particular intersection a "stop intersection", as opposed to making the dominant highway at that particular intersection a "through highway."

Having thus made such a distinction, the reason appears for two paragraphs in Section 46-423, which reads as follows:

"Vehicle entering through highway or stop intersection. The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching

so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the driver[s] of all other vehicles approaching the intersection on such through highway. shall yield the right of way to the vehicle so proceeding into or across the through highway.

"The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed. (1952 Code Sec. 46-423; 1949 (46) 466.)"

The first paragraph of this section is applicable to "through highways", while the second paragraph is applicable to "stop intersections." It is true that the duty imposed upon the driver on the servient highway is substantially the same with respect to both a "through highway" and a "stop intersection", but the first paragraph sets forth the corresponding duty of a driver on the dominant highway, while for some reason, not readily apparent or material here, the last paragraph does not expressly impose the same or similar duty upon the driver on the dominant highway.

While the record contains no specific evidence as to stop signs being erected at the intersections of State Highway 38, either throughout its course or a substantial portion thereof, the evidence does repeatedly refer to said highway as a primary highway, a main highway, and the main highway leading from Latta to Bennettsville, which seems to us evidence that it was a "through highway" within the purview of Section 46-252.

Under these circumstances, the first paragraph of Section 46-423 was applicable to the case and should have been charged by the circuit judge. His refusal to do so constituted error in that the duty of the driver on

the dominant highway was not communicated to the jury. The charge of the last paragraph alone could have well conveyed to the jury, under the circumstances, the impression that the driver on the dominant highway had an absolute right of way at that particular intersection.

It was held in *Lawter v. War Emergency Co-op Ass'n,* 213 S. C. 286, 49 S. E. (2d) 227, that the statute under consideration does not create an absolute right of way, is relative only, and must be construed reasonably and applied to the circumstances of each case.

The second exception relates to the charge as to speed restrictions. As above pointed out, it is undisputed that there were signs in the vicinity of the intersection limiting speed to thirty-five miles per hour. The only speed statute which the trial judge read to the jury in his main charge was Section 46-361, which states the reasonable and prudent rule. He made no comment on the effect of the speed limit signs.

At the conclusion of his charge, in the absence of the jury, counsel for appellant, *inter alia,* requested the court to charge Sections 46-361, 46-362 and 46-363, relating to speed. Both counsel and the court apparently overlooked the fact that the judge had already charged 46-361, and when the jury returned the circuit judge charged all three sections, but, in charging Section 46-362, he omitted to charge the last sentence thereof, which reads as follows:

"The *prima facie* speed limits * * * in this section may be altered as authorized in §§ 46-367 to 46-371."

In addition, the judge of his own volition and in connection with his charge as to *prima facie* speed limits, stated to the jury:

"I charge you in connection with that, that there is no testimony in the case showing this was a business district and there is no evidence showing it was a residential district as described under the law."

When the jury was again excused, counsel excepted to the foregoing language of the judge as being erroneous "in

view of the fact that the testimony concluded (*sic*) that the posted limit of thirty-five miles per hour existed at the point in question." While admittedly counsel could have been a bit more explicit under the circumstances, it seems to us that counsel's language was sufficient to call to the attention of the judge that the statement which he had just made had the effect of erroneously telling the jury that the *prima facie* speed limit of fifty-five miles per hour was applicable and that the jury was not to consider the existing posted speed limit.

Though not specifically argued by appellant's counsel here or mentioned below, there was evidence from which it could be inferred that the area traversed by the Garner automobile was in fact a residence district. Section 46-261 defines a residence district as follows:

"A 'residence district' is the territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of three hundred feet or more is in the main improved with residences or residences and buildings in use for business. (1952 Code Sec. 46-261; 1949 (46) 466.)"

The plat and photographs in evidence are strong evidence that the particular area was, in fact, a residence district within the foregoing statutory definition.

It seems to us that more than one inference could be drawn from the very existence of the thirty-five mile speed limit sign. The existence of this sign, independently of as well as in connection with the other evidence, could well give rise to the inference that it was placed there by the Highway Department because the area, in point of fact, was a residence district. Another inference, independently of the other evidence, would be that it was placed there by the Highway Department pursuant to the authority set forth in Sections 46-362 and 46-367.

In the light of the foregoing evidence and the inferences which could be drawn therefrom, counsel for appellant specifically requested the trial judge to

charge Sections 46-361, 46-362, and 46-363, which, as we construe it, was a request to charge all applicable portions of those particular sections. Instead of doing so, the judge omitted the last sentence of Section 46-362, and made what we consider to be an erroneous, misleading, prejudicial statement.

We wish to point out that there is a close question as to whether appellant's exception as to the judge's charge with respect to speed restrictions complies with Rule No. 4. The only exception thereabout reads as follows:

"6. That the trial judge erred in connection with charging Section 46-362 of the Code (*prima facie* speed limits) by reading the *prima facie* speed limits applicable to business district, residential district, and other conditions, and remarking to the jury that there is no evidence in the record that the area in question is a business district and no evidence that there is a residential district when it is undisputed in the record that the area in question had a posted speed limit of 35 miles per hour."

While it is a close question as to whether the quoted exception embodies a meritorious assignment of error, it was held, we think soundly, in *Jackson v. Carter*, 128 S. C. 79, 121 S. E. 559, and subsequently followed, that:

"If such examination of an exception as may be necessary to disclose that it is framed in violation of this rule, also discloses that it clearly embraces a meritorious assignment of prejudicial error, the court will ordinarily waive the breach of the rule and consider the exception. Otherwise the exception will not generally be considered."

See also *Wallace v. Timmons*, 232 S. C. 311, 101 S. E. (2d) 844; *Brady v. Brady*, 222 S. C. 242, 72 S. E. (2d) 193.

The exception before us complains of the language of ■ the trial judge and points out the undisputed existence of a thirty-five mile speed limit sign. Since under the evidence the judge's remark was clearly erroneous,

and since the undisputed existence of the speed limit sign was susceptible of more than one inference, we are of the opinion that while presenting a close question, the exception, as framed, clearly embraces a meritorious assignment of prejudical error.

To revert to the failure of the judge to charge the first paragraph of Section 46-423, it is suggested that such was, at most, harmless error since it is implicit in the verdict of the jury that it found that appellant either recklessly entered the intersection without stopping, or that having stopped, she recklessly failed to yield the right of way to traffic approaching so closely as to constitute an immediate hazard— thus breaching duties equally enjoined by the language of both paragraphs of said section. That is, of course, correct, but it does not follow that the jury would so have found had the jury been fully and correctly charged with respect to the duties of the driver on the dominant highway as to both speed and the particular intersection.

Although it was incumbent upon the appellant here to yield the right of way, she was not required to anticipate the approach of a vehicle operated in an unlawful manner. In the absence of any circumstances which would reasonably give notice to the contrary, the appellant was entitled to presume that other approaching vehicles would be operated in accordance with the law and she would not be negligent, let alone reckless, in so assuming, *Myers v. Evans*, 225 S. C. 80, 81 S. E. (2d) 32. The appellant was entitled to have her conduct judged in the light of the foregoing presumption. *Caines v. Marion Coca-Cola Bottling Co.*, 198 S. C. 204, 17 S. E. (2d) 315.

In the light of these well settled principles of law, it seems to us to follow that both errors of the trial judge were prejudical and that had the jury been correctly charged as to the duties of Garner, they may have very well concluded that, under all of the circumstances, appellant here was at most guilty of mere inadvertence, as opposed to recklessness. Moreover, the jury could have con-

cluded that any lack of care on appellant's part was not the proximate cause of the collision, but that the proximate cause thereof was the negligence or willfulness of Garner.

For the foregoing reasons, the judgment below is reversed and the cause remanded for a new trial.

TAYLOR, C. J., and MOSS, J., concur.

LEWIS and BRAILSFORD, JJ., dissent.

BRAILSFORD, Justice (dissenting).

I reluctantly find myself in disagreement with the majority opinion and will undertake to state my reasons therefor.

The majority opinion correctly holds that the first paragraph of Section 46-423 applies to "through highways" while the second paragraph applies to "stop intersections." However, the real question is not whether the trial judge failed to read the applicable portion of the statute to the jury. The question is whether the jury was correctly instructed as to appellant's duties on reaching the intersection. A comparison of the two paragraphs shows that the second imposes the same duties on the entering motorist at a stop intersection as are imposed on him at a through highway by the first paragraph and in substantially the same language. He must stop in obedience to a stop sign (present here) and yield the right of way "to vehicles which are within the intersection or approaching so closely as to constitute an immediate hazard, but then may proceed." The majority opinion apparently concedes the adequacy of the second paragraph to state the duties of the entering motorist. Error is predicated on the omission from this paragraph of a statement of the corresponding duty of a motorist on the through highway, which is expressed in the first paragraph. After the entering motorist has stopped and yielded, he may proceed and "the driver[s] of all other vehicles approaching the intersection on such through highway shall yield the right of way * * *." Obviously this statutory duty, which was omitted from the instructions, does not arise until the entering motorist has obeyed the mandate to stop and yield,

which the verdict of the jury establishes that appellant failed to do. Therefore, under the facts found by the jury, the corresponding duty of the motorist on the through highway never arose and an instruction on it could not have been helpful to appellant.

Turning now to the exception relating to the charge as to speed restrictions. The intersection in question is in a posted 35 mile per hour speed zone. This fact was put before the jury by oral testimony, a plat and pictures. Either inadvertently or upon the reasonable assumption that the significance of the speed zone would not escape the jury, the trial judge read Section 46-361, which states the reasonable and prudent rule, and omitted the other sections relating to speed from his charge. He made no comment on the effect of the speed limit signs, which, under the circumstances, would have been the only necessary or appropriate addition to the instructions. Inexplicably, instead of requesting such an instruction, counsel for appellant requested that Sections 46-361, 46-362 and 46-363 be read to the jury. This request was complied with. However, in reading Section 46-362 (*prima facie* speed limits), which was not applicable to the case, the trial judge omitted the last sentence thereof and stated to the jury "there is no evidence in the case showing this was a business district and there is no evidence showing it was a residential district, as described under the law." Counsel for appellant did not object to the omission of the last sentence of the section, which refers to the authority of the Department to alter the *prima facie* speed limits, nor did he request an explanation of the effect of the posted signs on the *prima facie* speed limit. He did make the following objection:

"* * * The defendant respectfully excepts to the additional charge as to that portion where your Honor pointed out to the jury that there was no evidence that this was a business district or residential district * * * in view of the fact that the testimony concluded (*sic.*) that the posted limit of 35 miles an hour existed at the point in question."

The exception on this point charges that the court erred in "remarking to the jury that there is no evidence in the record that the area in question is a business district and no evidence that there is a residential district when it is undisputed in the record that the area in question had a posted speed limit of 35 mi. per hour."

Appellant's counsel has not challenged the factual correctness of the trial judge's statement as to the absence of such evidence, although the majority opinion appears to do so. His argument shows conclusively that the exception was not intended to mean that the judge's statement was erroneous because the presence of the speed zone was evidence of the existence of a residential district. There is no inconsistency between the challenged statement of the trial judge and the existence, under the authority of Section 46-367, of a posted speed limit zone. Therefore, the exception fails to embody a meritorious assignment of error—not because of its form, but for lack of substance. It simply fails to put forward any proposition of law or fact which this court can review.

The only error in the charge was the failure of the trial judge to instruct the jury on the effect of the posting of speed limit signs, an error which was not properly reserved in the court below and which has not been properly raised on this appeal. Because counsel failed to request an instruction relating to the posted speed limit, a properly framed exception assigning this omission as error would not be considered on this appeal. In effect, the majority opinion allows appellant to come in through the back door and take advantage of an omission from the charge which was not requested in the court below.

I would affirm the judgment below.

LEWIS, J., concurs.