Charles Ellis **DAVENPORT**, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

Civ. A. No. 4520.

United States District Court
W. D. South Carolina,
Greenwood Division.

May 20, 1965.

See also D.C., 241 F.Supp. 320.

John C. Williams, U. S. Atty., and Geddes H. Martin, Asst. U. S. Atty., Greenville, S. C., for defendant.

WYCHE, District Judge.

Plaintiff brings this action for personal injuries under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq. The plaintiff alleges that his injuries were the direct and proximate result of the negligent and reckless operation of an army truck owned by the defendant and operated by a member of the Armed Forces, acting in the line of duty and within the course and scope of his employment.

The defendant set up three defenses in its answer, (1) a general denial, (2) contributory negligence and recklessness of plaintiff, and (3) a counterclaim in which the defendant seeks a recovery for the damages to its vehicle.

This case was tried before me without a jury upon the issues made by the complaint and answer, and having heard the testimony of the witnesses and having observed their conduct and demeanor on the witness-stand, and having weighed their credibility, and having considered the exhibits, in compliance with Rule 52 (a), Rules of Civil Procedure, 28 U.S.C. A, I find the facts specially and state my conclusions of law thereon in the above cause as follows:

### FINDINGS OF FACT

On the afternoon of August 10, 1963, at about six-thirty o'clock plaintiff and his two sons were riding in a Chevrolet sedan driven and operated by plaintiff, and were proceeding from Newberry in a westerly direction along Highway S–36–58 to their home. Plaintiff's elder son was seated in the front seat beside his father and plaintiff's younger son was in the rear seat. They were traveling at a speed of less than fifty miles per hour and collided with a United States Army 2½ ton truck in plaintiff's right lane of travel at a point 60 feet and 6 inches, from the center lane of the intersection of Highway S–36–58 and Highway S–36–64.

Thomas H. Pope and Robert D. Schumpert, Newberry, S. C., for plaintiff.

South Carolina Highway S–36–58, a paved highway sixteen feet wide, runs generally in an east-west direction from the City of Newberry to the Belfast community on the Laurens-Newberry County line. At a point near the old Floyd house, some ten miles from the City of Newberry, Highway S–36–64, which is likewise a paved highway, runs in a northerly direction from Highway S–36–58. Highway S–36–58 is the dominant highway, with a posted speed limit of fifty-five miles per hour. Highway S–36–64 is the servient highway and the South Carolina State Highway Department has erected a stop-sign on it at a point 31 feet, 6 inches, from the intersection of Highway S–36–58.

At a point approximately 300 feet east of the intersection, a dirt driveway leads to the old Floyd house. On the date in question, a United States Army Field Hospital was located in the yard of this home.

About 50 feet west of the private driveway leading to the Field Hospital and about 250 feet from the intersection, plaintiff and plaintiff's older son observed defendant's United States Army 2½ ton truck approaching the intersection and at a distance of about 75 feet from such intersection. Plaintiff applied his brakes. Skid marks on the highway extended for a distance of 105 feet before the admitted point of impact which was 60 feet, 6 inches, from the center of the intersection.

A military policeman was standing on the left side of the dominant highway at the intersection, charged with the duty of warning civilian traffic of the approach into the dominant highway of military vehicles. The only military vehicle approaching the intersection along the servient highway was defendant's Army 2½ ton truck. The military policeman made no effort to flag civilian traffic on the dominant highway and particularly to warn plaintiff. Instead, he waved the United States Army truck through the stop-sign and into the dominant highway. The truck made a sweeping left turn and immediately before the collision, the front wheels of the truck were in the left ditch of Highway S–36–58 and the rear of the truck was diagonally across the highway. The truck was struck at its left rear wheel in the approximate center of plaintiff's right lane of travel.

Defendant admitted that its vehicle was being operated by its authorized driver, acting in line of duty and within the course and scope of his employment. No explanation was given as to any necessity for disregarding the Highway Department's stop-sign nor for making the left turn into the dominant highway in such manner as to block completely the highway at a point 60 feet from the center of the intersection.

Plaintiff suffered extensive damages to his mouth, including the loss of four permanent teeth and damage to nine other permanent teeth; deep lacerations on the inside of his mouth and on the outside of the chin and below the lower lip; a fractured pelvis and extensive damage to the muscles, ligaments and cartilage in his leg. He was taken by ambulance to the Newberry County Memorial Hospital where he remained for nine days and where he underwent extensive medical treatment. Thereafter, he remained as a bed patient at home for a number of weeks and was ambulatory with crutches and later a walking cane for approximately six months following the accident.

Plaintiff was under the constant care of his dentist, his personal family physician and various orthopedic surgeons. He has a marked disfigurement on his chin and lower lip, has lost four permanent teeth, will continue to have difficulty with his teeth for the rest of his life and has suffered permanent disability of his mouth and has been permanently disfigured in the mouth, on his lip and chin. It will be necessary for plaintiff to replace the dentures and have additional dental work done in his mouth for the remainder of his life.

To date plaintiff has lost no earnings from his present employer since the employer has continued to pay his salary despite his inability to perform his regu-

lar duties. He has no assurance that such employment will continue. He has lost additional income from extra services performed in addition to his regular job for private citizens in the way of surveying and timber cruising which he has been unable to do since the accident. The plaintiff has a 33⅓ per cent. functional disability as a result of the permanent injuries to his pelvis and leg and is physically unable to carry on the normal duties required of him by his employer prior to his accident or to perform similar duties in any other employment for which he is trained. Plaintiff has a pronounced limp as a result of the accident to his pelvis and leg and such limp constitutes a permanent disfigurement to this plaintiff.

The plaintiff has sustained a 33⅓ per cent. permanent functional disability as a result of this collision and is permanently disfigured.

To date plaintiff has incurred medical and hospital expenses in the amount of $955.16. He will incur additional hospital, medical and dental charges for the remainder of his life. He has also sustained the loss of earnings and will continue to sustain loss of earnings for the remainder of his life.

At the time of his injury, plaintiff was forty-two years of age and had a life expectancy of 30.41 years.

█ Plaintiff was not guilty of any negligence which contributed as a proximate cause to his injuries.

Plaintiff's injuries, disability and disfigurement were the direct and proximate result of the negligence and recklessness of the defendant.

## CONCLUSIONS OF LAW, OPINION AND ORDER

This Court has jurisdiction of the parties and of the subject matter of this action.

█ Whether or not the defendant United States of America was guilty of actionable negligence through the actions of members of its Armed Forces in the instant case must be determined by the South Carolina law, since the Federal Tort Claims Act, 28 U.S.C.A. § 1346, provides that the United States shall be liable, "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

█ Under South Carolina law, the erection by the State Highway Department of a stop-sign at an intersection has the effect of making the intersection a "stop intersection". A motorist approaching a stop intersection on a servient highway has the duty to yield the right of way and is required to exercise due care for approaching traffic on the dominant highway. Allen v. Hatchell, 242 S.C. 458, 131 S.E.2d 516 (1963); Eberhardt v. Forrester, 241 S.C. 399, 128 S.E.2d 687 (1962).

█ One who without excuse drives through a stop-sign into a dominant highway is negligent *per se*. See, Pruitte v. Machen et al., 215 S.C. 13, 53 S.E.2d 866 (1949).

█ Also, under South Carolina law, the driver of a truck, when making a turn into an intersecting street, must obey the law and exercise the degree of care generally commensurate with the hazard produced by his failure to do so. Holcombe v. W. N. Watson Supply Co., Inc., 171 S.C. 110, 171 S.E. 604 (1933). As was held in West v. Sowell, 237 S.C. 641, 118 S.E.2d 692 (1961), " * * * the driver of the truck violated Section 46–388 by approaching the intersection of two highways on the left of the center line thereof, and violated Section 46–402 by failing to approach an intersection for a right turn as close as practical to the right hand edge of the roadway, and violated Section 46–405 by turning the truck at the intersection without having it in proper position as required by Section 46–402, * * *. A violation of these sections of the Code constitutes negligence *per se* and such negligence is actionable if it proximately caused injury to the respondents. Field v. Gregory et al., 230 S.C. 39, 94 S.E.2d 15."

In Deese v. Williams, 237 S.C. 560, 118 S.E.2d 330 (1961), the Court held, *inter alia*, " * * * the blocking of the highway by the truck gave rise to the duty to provide adequate warning and the discharge of this duty was directly connected with the operation of the truck."

Section 46-423, Code of Laws of South Carolina, 1962, requires the driver of a vehicle to stop in obedience to a stop-sign before proceeding into the dominant highway. Section 46-267 provides that a stop, when required, means a complete cessation from movement. Section 46-388 provides that no vehicle shall be driven to the left side of the roadway when traversing an intersection. Section 46-402 provides for the method of turning at intersections, while Section 46-405 prohibits the turning of a vehicle at an intersection unless the vehicle is in proper position as required by Section 46-402. Section 46-422 provides that the driver of a vehicle intending to turn to the left at an intersection shall yield the right of way to any vehicle approaching from the opposite direction which is so close thereto as to constitute an immediate hazard.

The defendant was guilty of actionable negligence and recklessness in failing to heed the stop-sign on the servient highway, in making a left turn in such manner as completely to block the highway on the through-highway at a distance of 60 feet, 6 inches, from the center of the intersection, and in failing to warn plaintiff of the left turn without stopping of the Army truck into the dominant highway and into the path of the automobile which plaintiff was driving. Plaintiff was not guilty of any actionable negligence which contributed as a proximate cause to his injuries.

 In considering plaintiff's actual damages, it is proper to consider not only his pain and suffering to date, but also his permanent disability and permanent disfigurement. At the time of his injury he had a life expectancy of 30.-41 years. Section 26-12, Code of Laws of South Carolina, 1962.

Based upon the foregoing Findings of Fact, Conclusions of Law and Opinion, I am of the opinion that the plaintiff Charles Ellis Davenport should have judgment against the defendant United States of America in the sum of Thirty-five Thousand ($35,000.00) Dollars, actual damages.

 I am of the further opinion that plaintiff's attorneys are entitled to a fee of twenty (20%) per cent. or the sum of Seven Thousand and no/100 ($7,000.00) Dollars, to be paid them by the defendant from the said sum of Thirty-five Thousand ($35,000.00) Dollars.

Defendant's counterclaim is dismissed.

Entry of appropriate judgment is directed accordingly, and

It is so ordered.